Judith A. Archer
Todd R. Hambidge
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York 10103-3198
(212) 318-3000
jarcher@fulbright.com

*Attorneys for Plaintiff Rusal America Corp.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

RUSAL AMERICA CORP.,

        Plaintiff,

-v-

EULER HERMES AMERICAN CREDIT
INDEMNITY COMPANY,

        Defendant.

------------------------------------x

Index No.

09 CV 7165

**COMPLAINT**

JUDGE DANIELS

RECEIVED AUG 19 2009 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiff Rusal America Corp., by its attorneys Fulbright & Jaworski L.L.P., as and for its Complaint, alleges as follows:

### NATURE OF THE ACTION

1.     This action seeks to redress Defendant Euler Hermes American Credit Indemnity Company's ("Euler") breach of its insurance policy (the "Policy") with Rusal America Corp. ("Rusal"), without justification and contrary to the express terms of the Policy.

2.  Under the Policy, which took effect on January 1, 2008, Euler agreed to insure Rusal in the event certain of Rusal's customers failed to pay Rusal for products, including by reason of insolvency.

3.  In February 2009, one of Rusal's customers, Aleris International Inc. ("Aleris"), became insolvent and could not pay for the Rusal products that Aleris had ordered on December 17, 2007 and that were shipped between January 13, 2009 and January 23, 2009.

4.  Because sales to Aleris, and the risk of loss from such sales, were covered by the Policy, Rusal promptly notified Euler of its claim for $6,241,963.72 for the sales it had made to Aleris in January 2009 for which it had not been paid.

5.  Over three months later, Euler responded, denying complete coverage for these January sales. Euler claimed that a reduction in Aleris's Credit Limit under Rusal's Policy limited recovery to $3 million, rather than the $7.5 million Credit Limit in place when Euler reduced the Credit Limit on December 5, 2008. Euler also claimed that it was entitled to a percentage of cash sales that Euler had authorized and Rusal had made to Aleris in February.

6.  In addition, Euler admitted coverage in the amount of $2,556,973.06, but has failed to pay that undisputed amount to Rusal.

7.  Under the terms of an Endorsement to the Policy, however, Euler's reduction in Credit Limit on December 5, 2008 had no effect on orders already placed and shipped within three months of such notice. Rusal informed Euler of such fact by letter in June and July 2009, but has received no response from Euler.

8.  Euler also expressly consented to cash sales that Rusal made to Aleris and agreed that such sales would be insured and that monies received for those sales could be applied by Rusal to the corresponding invoices, with no indication that Euler had any expectation that such monies would be shared pro rata with Euler.

9.  Euler has breached the Policy and Rusal is entitled to $6,241,963.72 plus interest to compensate it for its loss.

## JURISDICTION

10. This Court has jurisdiction of this claim pursuant to 28 U.S.C. § 1332 because the Plaintiff is a Delaware corporation with its principal place of business in New York and the Defendant is a Maryland corporation with its principal place of business in Maryland, and thus there is complete diversity between the parties and the amount in controversy in this action exceeds $75,000.00.

11. This Court has jurisdiction over Defendant because this action has a substantial relationship to and arises from Euler's contract to supply services within the state of New York. On information and belief, Euler maintains an office in, conducts business in, has substantial contacts with, and has purposefully availed itself of the privilege of conducting activities within New York.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (c).

## THE PARTIES

13. Plaintiff Rusal is a corporation organized and existing under and by virtue of the laws of the State of Delaware, with its principal place of business at 550 Mamaroneck Avenue,

Harrison, New York 10528. Rusal is a subsidiary of United Company RUSAL, the world's largest aluminum and alumina producer. Rusal distributes, markets, and sells aluminum and aluminum alloy products, as well as carbon and stainless products.

14. On information and belief, Euler is a corporation organized and existing under and by virtue of the laws of Maryland, with its principal place of business at 800 Red Brook Boulevard, Owings Mills, Maryland 21117. On information and belief, Euler is a credit insurance company and a subsidiary of Euler Hermes ACI Holding Inc., North America's largest provider of accounts receivable insurance.

## FACTUAL ALLEGATIONS

### The Domestic Markets Business Credit Insurance Policy Between Euler and Rusal

15. On or about January 1, 2008, Rusal and Euler entered into Domestic Markets Business Credit Insurance Policy (No. 4093043) (the "Policy") whereby Euler agreed to provide insurance against covered credit losses and Rusal agreed to pay certain insurance premiums to Euler. A true and correct copy of the Policy is annexed hereto as Exhibit A, and is incorporated by reference herein.

16. The Domestic Markets Policy Declaration (the "Declaration") annexed to the Policy specifies that the Policy had a value of $40 million and that the Policy Period, *i.e.*, the time within which "Shipments of Covered Products can be Dispatched to covered Buyers," was from January 1, 2008 until December 31, 2008. A true and correct copy of the Declaration is annexed hereto as Exhibit B, and is incorporated by reference herein.

17.     By Endorsement made a part of the Policy, the Policy Period was extended from 12/31/08 to 1/31/09. A true and correct copy of the Endorsement is annexed hereto as Exhibit C and incorporated by reference herein.

18.     Under § II.A of the Policy, Euler agreed, subject to terms and conditions, to "cover [Rusal] against credit losses due to the non-payment of amounts due from a covered Buyer for Shipments of Covered Products made by [Rusal] during the Policy Period . . . ."

19.     Section XI.2 of the Policy defines "Buyer" as "a legal entity and its branch offices, trade styles or divisions, if any, which is domiciled in the United States (including Puerto Rico) or Canada and is approved for coverage under this Policy."

20.     Section XI.32 of the Policy defines "Shipments" as "Covered Products which are Dispatched by the Insured and Delivered to a Buyer." Section XI.4 of the policy defines "Covered Products" as "the products and/or services, including associated labor and service costs, described on the Declaration."

21.     Section XI.26 of the Policy defines "Policy Period" as "the period of time during which Shipments of Covered Products can be Dispatched to covered Buyers in order to be covered under this Policy."

22.     Section XI.8 of the Policy defines "Dispatched" as meaning "the point in time when Covered Products leave the Insured's control."

23.     Section XI.6 of the Policy defines "Delivery" as "the point in time when legal title to and the risk of loss of the Covered Products is transferred to the Buyer and the Covered Products have left [Rusal's] custody and physical control."

24. Under § II.B, the Policy expressly includes coverage for credit losses arising from the insolvency of a covered Buyer.

25. Section IV.A of the Policy specifies that Rusal's coverage for a Buyer was governed by the Credit Limit, which "applies to all Shipments Dispatched to the Buyer during the Policy Period . . . ." Section XI.3 defines "Credit Limit" as "the maximum amount of coverage [Euler] will allow for each Buyer under this Policy."

26. Under § IV.D of the Policy, Euler had the right to reduce or cancel a Credit Limit for future Shipments upon written notice. However, "[t]he Credit Limit prior to reduction or cancellation applies to all Shipments made during the Policy Period, or otherwise specified time period, up to the date of [Euler's] notice."

27. Annexed to and expressly made part of the Policy was the Domestic Markets Construed Coverage Endorsement (the "Construed Coverage Endorsement"), which further specified:

> [I]f [Euler] in any instance shall have the right of cancellation/reduction as to future Shipment(s) to a Buyer and notice of cancellation/reduction be given, such notice shall not affect any Shipment(s) made thereafter in connection with a valid and legally binding written order which [Rusal] ha[s] accepted prior to the date of receipt of such notice, provided such Shipment(s) are Dispatched within three (3) months from the date the notice of cancellation/reduction was received.

A true and correct copy of the Construed Coverage Endorsement is annexed hereto as Exhibit D, and is incorporated by reference herein.

28. Thus, the original Credit Limit applied to all orders placed before Euler provided notice of a reduction in coverage, so long as the shipment was delivered within three months of such notice.

29.     Pursuant to the New York Endorsement signed on or about December 20, 2007, § X.E of the Policy was amended to clarify that: "This Policy and any dispute, suit or action on this Policy will be govern[ed] and construed according to the laws of the State of New York." A true and correct copy of the New York Endorsement is annexed hereto as Exhibit E, and is incorporated by reference herein.

30.     Rusal paid Euler all premiums required under the Policy.

### Rusal's Relationship with and Euler's Coverage of Sales to Aleris

31.     On or about December 3, 2007, Rusal entered into Sales Contract S-00970 with Aleris (the "2007 Sales Contract") whereby Aleris agreed to purchase certain amounts of primary aluminum T-Bars from Rusal each month of 2008. A true and correct copy of 2007 Sales Contract is annexed hereto as Exhibit F, and is incorporated by reference herein.

32.     On December 17, 2007, pursuant to the 2007 Sales Contract, Aleris placed a written order (Purchase Order No. 421412-MP (the "December 2007 Purchase Order")) for over 11 million pounds of "primary 1020 aluminum alloy," to be delivered by December 31, 2008. A true and correct copy of Purchase Order No. 421412-MP is annexed hereto as Exhibit G, and is incorporated by reference herein.

33.     Under Rusal's Policy with Euler, Euler originally provided a $20 million Credit Limit for Rusal's business with Aleris. As of July 31, 2008, Euler reduced the Credit Limit for Aleris from $20 million to $7.5 million. A true and correct copy of Euler's Reduction of Credit Limit Endorsement dated August 1, 2008 is annexed hereto as Exhibit H, and is incorporated by reference herein.

34. On November 26, 2008, Rusal and Aleris agreed in writing that the shipment ordered for delivery in December 2008 would be deferred into January 2009, with pricing to be changed from average December to average January. A true and correct copy of this e-mail agreement is annexed hereto as Exhibit I, and is incorporated by reference herein.

35. Aleris provided Rusal a revised purchase order, dated December 1, 2008 and signed by Aleris, which memorialized the agreement to defer delivery to Aleris by January 31, 2009. A true and correct copy of Revised Purchase Order No. 421412-MP, dated December 1, 2008 is annexed hereto as Exhibit J, and is incorporated by reference herein.

36. After the agreement was reached by Rusal and Aleris as to deferral of the December shipment, on December 5, 2008, Euler reduced the Credit Limit for Aleris to $3 million for Aleris. A true and correct copy of Euler's Reply to Credit Limit Request dated December 6, 2008 is annexed hereto as Exhibit K, and is incorporated by reference herein.

37. From January 13, 2009 until January 23, 2009, and pursuant to the 2007 Purchase Order, Rusal shipped $6,241,963.72 in goods to Aleris. Aleris did not pay Rusal for those goods.

38. On January 23, 2009, Euler cancelled the Credit Limit for Aleris for any *future* Shipments. A true and correct copy of Euler's Cancellation of Credit Limit dated January 24, 2009 is annexed hereto as Exhibit L, and is incorporated by reference herein.

39. On February 2, 2009, the 2007 Purchase Order was revised to specify the order price. A true and correct copy of Purchase Order No. 421412-MP, with a revised date of February 2, 2009 is annexed hereto as Exhibit M, and is incorporated by reference herein.

40. In early February, Rusal sought Euler's acceptance of continued sales to Aleris on a cash basis. At the time, Aleris had no outstanding balance. Pursuant to express agreement by Euler, Rusal continued to supply Aleris with its daily aluminum needs, but only on a cash basis. Euler agreed that such shipments were "insured as per the terms and conditions of the [P]olicy . . . ." Euler stated "We are agreeable to CBD sales in the amounts quoted below through Friday, 2/13/09. All monies received for those sales may be applied to the corresponding invoices . . . ." Such sales were made to comply with the terms of the 2007 Purchase Order and to not increase Aleris's debt to Rusal. A true and correct copy of email correspondence between Rusal and Euler from February 2009 is annexed hereto as Exhibit N, and is incorporated by reference herein.

41. On February 10, 2009, Aleris paid $715,327.95 to Rusal in payment for the goods Rusal had shipped to Aleris on January 11, 2009.

42. On February 11, 2009, Aleris became insolvent, filing a petition for Chapter 11 bankruptcy on February 12, 2009.

**Rusal's Notice of Claim**

43. On February 12, in accordance with the Policy, Rusal electronically filed "Notification of Claim for Policy 4093043," due to the insolvency of Aleris. A true and correct copy of the receipt from Rusal's electronic notice of claim filing is annexed hereto as Exhibit O and is incorporated by reference herein.

44.     Under its claim, Rusal asserted a credit loss of $6,241,963.72 as a result of Aleris's insolvency and concomitant inability to pay for the goods Rusal had shipped to Aleris under the Sales Contract of December 2007.

**Euler's Denial of Rusal's Claim**

45.     On May 20, 2009, Euler responded and denied Rusal's claim for $6,241,963.72, asserting that Rusal was entitled to only $2,556,973.06. A true copy of Euler's May 20, 2009 letter to Rusal (the "Denial of Coverage Letter") is annexed hereto as Exhibit P, and is incorporated by reference herein.

46.     Euler asserted in the Denial of Coverage Letter that the Policy's coverage as to Aleris was reduced to $3 million on December 5, 2008, and that such reduction in coverage limited recovery for the shipments to Aleris made after December 5, 2008 to $3 million, rather than the $7.5 million in coverage that applied to the 2007 Purchase Order. Euler claimed that the change in shipment from December 2008 to January 2009 agreed to between Rusal and Aleris did not meet the terms and conditions of the Construed Coverage Endorsement, which would apply to shipments made within three months of Euler's reduction in coverage. Euler contended that the January Shipments were not made pursuant to a "valid and binding written order." A true and correct copy of Euler's Notice of Reduction in Coverage is attached hereto as Exhibit Q, and is incorporated by reference herein.

47.     Euler's contentions are false. The 2007 Sales Contract and December 2007 Purchase Order were valid and in place, and it was agreed in writing between Rusal and Aleris -- *before* Euler lowered the coverage to $3 million -- that the December 2008 shipment would be delayed to January 2009. That agreement was further formalized into a binding purchase order

signed by Aleris and an Amendment to the 2007 Sales Contract signed by Rusal. There is no good faith basis for Euler to contend that the postponement was not pursuant to a valid and binding written order.

48. Euler also asserted that it was entitled to half of the proceeds generated by Aleris's $715,327.95 payment on February 10, 2009, despite the fact that such payment was for goods Rusal shipped to Aleris on January 11, 2009.

49. Rusal obtained prior approval from Euler for making shipments to Aleris as cash sales. Euler expressly agreed that the cash sales would be insured. At no time did Euler request or Rusal agree that it would share the cash received on a pro rated basis with Euler since Rusal was working to reduce Euler's overall exposure in the event of a bankruptcy filing by Aleris.

50. On June 8, 2009, Rusal replied to Euler's rejection of its claim, setting forth the terms of the Endorsement, Euler's notice and acceptance of the February 20, 2009 cash sale to Aleris, and requesting that Euler reevaluate its position. A true and correct copy of the Letter from Fulbright & Jaworski to Euler, dated June 8, 2009 is attached hereto as Exhibit R, and is incorporated by reference herein.

51. After waiting over one month for a response, counsel for Rusal re-sent the June 8, 2009 letter, seeking a response by July 24, 2009. A true copy of the Letter from Fulbright & Jaworski to Euler, dated July 10, 2009 is attached hereto as Exhibit S, and is incorporated by reference herein.

52. Euler has not responded to either of Rusal's letters seeking reconsideration of Rusal's claim and full payment under the Policy. Euler also has not paid the $2,556,973.06 that it admits it owes under the Policy. Euler is in breach of the Policy.

## CAUSE OF ACTION

## BREACH OF CONTRACT

53. Rusal incorporates herein by reference paragraphs 1 - 52 as though fully set forth herein.

54. Over the last several months of 2008, the parties negotiated the terms of the Policy, with the Policy coming into effect on January 1, 2008.

55. Rusal fully performed all of its obligations as set forth in the Policy and the documents annexed thereto, including paying all premiums and providing timely notice of covered loss as required by the Policy.

56. Euler breached its contractual obligations to Rusal under §§ I.A, II.A, IV.A, and IV.D of the Policy and also breached its contractual obligations under the Construed Coverage Endorsement annexed thereto.

57. Euler breached its contractual obligations as a result of its failure to cover Rusal against credit loss arising from the insolvency of Aleris.

58. Euler's failure to pay Rusal as required by the policy and within 60 days of the date of loss (February 12, 2009) has caused damage to Rusal in the amount of $6,241,963.72, plus interest.

WHEREFORE, as a result of Euler's breach of the Policy, Rusal is entitled to $6,241,963.72 plus interest, as well as such other and further relief as the Court may deem just and proper.

Plaintiff demands a jury trial of such claims as are properly tried before a jury.

Dated: August 13, 2009
  New York, New York

Respectfully submitted,

BY: _____
  Judith A. Archer
  Todd R. Hambidge
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York 10103-3198
(212) 318-3000
jarcher@fulbright.com

*Attorneys for Plaintiff Rusal America Corp.*